OPINION
HURWITZ, Justice.
¶ 1 This case requires us to determine the effect of Arizona Revised Statutes (“A.R.S.”) § 9-462.02(C) (Supp.2004) on numerous zoning enforcement actions filed by the City of Tucson (“the City”) against Clear Channel Outdoor, Inc. (“Clear Channel”). We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, and A.R.S. § 12-120.24 (2003).
I.
¶ 2 This case comes to us as a result of almost twenty years of legal skirmishing between the City and owners of advertising billboards. In 1985, the City adopted an ordinance regulating the size, location, and height of various signs, including billboards. In 1986, Clear Channel’s predecessor, Whiteco Metrocom, Inc.,[1] sued the City in federal court, alleging that the ordinance violated Arizona and federal law. The district court found against Whiteco. The Ninth Circuit consolidated Whiteco’s appeal with a similar claim filed by Outdoor Systems, Inc., against the City of Mesa. See Outdoor Systems, Inc. v. City of Mesa, 997 F.2d 604, 608-09 (9th Cir.1993). The Ninth Circuit then certified a question to this Court, asking whether the Tucson and Mesa codes violated the Urban Environment Management Act, A.R.S. §§ 9-461 and -462 (1990). We held that they did not. Outdoor Systems, Inc. v. City of Mesa, 169 Ariz. 301, 819 P.2d 44 (1991). The Ninth Circuit then upheld Tucson’s sign code against all remaining challenges. Outdoor Systems, 997 F.2d at 620.
¶ 3 In 1994, the legislature enacted A.R.S. § 9-462.02 (1994). 1994 Ariz. Sess. Laws, ch. 111, § 1. This statute effectively “grandfathered” existing non-conforming billboards by prohibiting municipalities from requiring their owners to waive the right to continue their use as a precondition for the issuance of a permit or other municipal approvals. A.R.S. § 9-462.02(B). The statute also gave municipalities the authority to condemn nonconforming billboards, A.R.S. § 9-462.02(A), or to pay for relocation, A.R.S. § 9-462.02(B).
¶ 4 Before § 9-462.02 became effective, the City sued Whiteco, seeking the removal of some non-conforming billboards. In City of Tucson v. Whiteco Metrocom, Inc., 194 Ariz. 390, 983 P.2d 759 (App.1999), the court of appeals held that § 9-462.02 applied retroactively to prohibit the City from enforcing its ordinance against some, but not all, of the billboards in question.
¶ 5 In 2000, the legislature enacted A.R.S. § 9-462.02(C), 2000 Ariz. Sess. Laws, ch. 34, which became effective on July 18, 2000. Section 9-462.02(C) provides:
A municipality must issue a citation and file an action involving an outdoor advertising use or structure zoning or sign code violation within two years after discovering the violation. Such an action shall initially be filed with a court having jurisdiction to impose all penalties sought by the action and that jurisdiction is necessary for effective filing. Only the superior court has jurisdiction to order removal, abatement, reconfiguration or relocation of an outdoor advertising use or structure. Notwith *537 standing any other law, a municipality shall not consider each day that an outdoor advertising use or structure is illegally erected, constructed, reconstructed, altered or maintained as a separate offense unless the violation constitutes an immediate threat to the health and safety of the general public.
¶ 6 On July 17, 2000, one day before the effective date of A.R.S. § 9-462.02(C), the City filed a 122-count complaint in superior court, each count challenging a separate nonconforming Clear Channel billboard. On July 17, 2001, one day less than a year after the effective date of § 9-462.02(C), the City filed a second amended complaint, adding fifty-one counts concerning other billboards. The superior court found that eighty-nine of the 173 counts involved violations that the City had discovered more than two years prior to filing. The superior court dismissed these eighty-nine counts, holding that the new two-year statute of limitations in § 9-462.02(C) barred the claims.[2]
¶ 7 The court of appeals affirmed. City of Tucson v. Clear Channel Outdoor, Inc., 206 Ariz. 335, 78 P.3d 1056 (App.2003). Relying on A.R.S. § 12-505(B) (2003), the court held that § 9-462.02(C) applied retroactively and that the new two-year limitations period ran from the time the City first discovered the zoning violations. Id. at 338 ¶ 8, 78 P.3d at 1059.
¶ 8 We granted the City’s petition for review to address the retroactivity issues in light of A.R.S. § 12-505, which governs the effect of laws changing statutes of limitations.[3] Because this case involves a matter of statutory interpretation, we apply a de novo standard of review. Canon School Dist. No. 50 v. W.E.S. Constr. Co., 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).
II.
¶ 9 The court of appeals found no constitutional infirmity in applying A.R.S. § 9-462.02(C) retroactively to bar the City’s existing enforcement claims. Clear Channel, 206 Ariz. at 337-38 ¶ 7, 78 P.3d at 1058-59. The court relied on its prior opinion in Whi-teco, which held that a municipality’s power to zone and to enforce its zoning laws is a purely statutory creation, and “[ejvery right or remedy created solely by a modified statute disappears or falls with the modified statute unless carried to final judgment before the repeal or modification.” 194 Ariz. at 394 ¶¶ 9, 12, 983 P.2d at 763 (citations omitted). Neither party challenges that ruling before this Court. We thus start from the premise that the legislature could have enacted a statute stripping all enforcement power from the City with respect to violations of the sign code occurring before the effective date of the statute. It necessarily follows that the legislature could have barred enforcement actions for violations discovered more than two years before the date of filing suit.
¶ 10 But, while there is no dispute about the legislature’s constitutional power to enact a statute barring enforcement actions filed before the statute’s effective date, the parties disagree vehemently about whether § 9-462.02(C) is in fact such a statute. The statute is silent on the issue of retroactivity. We therefore begin with general principles concerning retroactivity of statutory enactments.
A.
¶ 11 “No statute is retroactive unless expressly declared therein.” A.R.S. § 1-244 (2002). However,
[t]his court has previously created an exception to the general rule requiring express language of retroactivity. Enactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively. Even if a statute does not expressly pro *538 vide for retroactivity, it may still be applied if merely procedural because litigants have no vested right in a given mode of procedure.
Aranda v. Indus. Comm’n, 198 Ariz. 467, 470 ¶ 11, 11 P.3d 1006, 1009 (2000). Thus, “statutory changes in procedures or remedies may be applied to proceedings already pending except where the statute effects or impairs vested rights.” Wilco Aviation v. Garfield, 123 Ariz. 360, 362, 599 P.2d 813, 815 (App.1979).[4] Arizona courts have traditionally viewed statutes of limitations as procedural for retroactivity purposes. See, e.g., Harrelson v. Indus. Comm’n, 144 Ariz. 369, 372, 697 P.2d 1119, 1123 (App.1984).
¶ 12 Our inquiry today, however, is not guided solely by the judge-made exceptions to the general statutory rule about retroac-tivity. The legislature has expressly addressed the retroactivity of newly enacted statutes of limitations in A.R.S. § 12-505. That statute, entitled “Effect of statute changing limitation,” provides as follows:
A. An action barred by pre-existing law is not revived by amendment of such law enlarging the time in which such action may be commenced.
B. If an action is not barred by preexisting law, the time fixed in an amendment of such law shall govern the limitation of the action.
C. If an amendment of pre-existing law shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect, and not afterward.
This case requires us to determine the interplay between § 12-505 and § 9-462.02(C) with respect to the eighty-nine dismissed counts in the City’s enforcement action against Clear Channel.
B.
¶ 13 The counts dismissed by the superior court fall into two categories — those filed before the effective date of § 9 — 462.02(C) and those filed within a year after the statute’s effective date. We analyze these two groups of claims separately.
¶ 14 In Arizona, a statute of limitations is tolled when a suit is commenced. Murphey v. Valenzuela, 95 Ariz. 30, 33, 386 P.2d 78, 80 (1963). A suit is commenced by the filing of a complaint. Id.; Ariz. R. Civ. P. 3. The parties agree that prior to the effective date of § 9 — 462.02(C), the City, a political subdivision of the State, was exempted from the application of any statute of limitations. See A.R.S. § 12-510 (2003) (providing that “the state shall not be barred by the limitations of actions prescribed in this chapter”); Tucson Unified Sch. Dist. v. Owens-Coming Fiberglas Corp., 174 Ariz. 336, 849 P.2d 790 (1993) (holding that political subdivisions of the state are exempt from statutes of limitations, regardless of the nature of claim brought). Therefore, it is plain that the fifty-five counts in the original complaint were timely when filed.
¶ 15 The question is thus whether a timely filed action is barred because the action would have been untimely under a statute of limitations that became effective after the filing. The Territorial Supreme Court addressed this very issue in Curtis v. Boquillas Land & Cattle Co., 9 Ariz. 62, 76 P. 612 (1904). At the time the suit in question was commenced, no statute of limitations governed actions for the recovery of lands by one claiming title against another holding by peaceable and adverse possession. Id. at 67, 76 P. at 614. A subsequently enacted statute provided for a ten-year limitations period. Id. Curtis held that “an act which merely limited the time within which an action may be brought does not apply to a suit which, though commenced after the passage of the *539 act, was pending at the time the same took effect.” The Court noted that “[t]he logic of this rule is apparent, particularly when applied to a case like the one at bar, where the action was begun before the act took effect, and at the time no other statute of limitations was in force as to such actions.” Id.[5]
¶ 16 Curtis states the settled rule: absent an express legislative statement to the contrary, an act that limits the time in which an action can be brought does not apply to a suit pending at the time the act becomes effective. See Vreeland v. Town of Bergen, 34 N.J.L. 438, 1871 WL 6747 (N.J.1871); Mass. Bonding & Ins. Co. v. Bryant, 189 So.2d 614 (Fla.1966); People ex rel. Dep’t of Rev. v. Nat’l Liquors Empire, Inc., 157 Ill.App.3d 434, 109 Ill.Dec. 627, 510 N.E.2d 495 (1987); City of Willmar v. Short-Elliott-Hendrickson, Inc., 475 N.W.2d 73 (Minn.1991); cf. State v. Simmons, 290 N.W.2d 589, 594 (Iowa 1980) (declining to apply statute imposing statute of limitations on claims to riverbed ownership to actions pending when the statute was enacted).
¶ 17 Clear Channel argues that Curtis is distinguishable because it involved the “vested rights” of a private plaintiff to bring suit, and any contrary holding would have raised due process concerns.[6] But while Curtis did involve a private plaintiff, the ease stands for a broader principle — that changes in modes of procedure do not invalidate completed procedural actions valid under the law in effect at the time they were taken.[7] See Cummings v. Rosenberg, 12 Ariz. 327, 328-29, 100 P. 810, 811 (1909) (citing Curtis for the proposition that an amended statute of limitations has no application to an action “brought before it took effect”). Any contrary approach would wreak havoc on pending cases. For example, if the legislature enacted a statute mandating personal service of every complaint which was silent on the issue of retroactivity, we would surely not apply the statute to invalidate services that were valid under the law in effect at the time they were made.
¶ 18 Miami Copper Co. v. State, 17 Ariz. 179, 149 P. 758 (1915), illustrates the rule. That case involved a law permitting civil cases to be decided upon the concurrence of nine of twelve jurors in a civil case; prior law had required a unanimous verdict. Id. at 185, 149 P. at 760. After the passage of the law, but before its effective date, the superior court authorized nine jurors to issue a verdict. Although recognizing that the change in the law was purely procedural and that “there is no vested right in the modes of procedure,” id. at 193, 149 P. at 763, this Court nonetheless held that the procedure in effect at the time the case went to the jury governed. Id. It therefore reversed the judgment of the superior court based on a nine-juror verdict, even though the result would be to remand for a trial in which nine jurors could issue a verdict under the newly applicable mode of procedure. Id. at 193, 149 P. at 763.
*540 ¶ 19 Miami Copper thus stands for the same proposition as Curtis — procedural changes in the law are not retroactive when the procedure at issue was completed in accordance with the law then in effect. The legislature can, of course, abrogate pending causes of action by municipalities and can therefore also make procedural changes that accomplish the same effect retroactively. But nothing in § 9-462.02(C) suggests that the legislature intended such a result.[8] Indeed, the legislature was well aware of its powers to terminate pending enforcement actions; it did so in 1994 in enacting subsections A and B of the same statute. If the legislature intended to do so in subsection C, it surely would have chosen a mechanism far more direct than simply enacting a statute of limitations. See Bowles v. Ariz. Dep’t of Rev. (In re Estate of O’Connor), 139 Ariz. 450, 453, 679 P.2d 96, 99 (App.1984) (“The legislature is perfectly capable of expressing a statutory bar when it so intends and we will not read such a result into a statute absent a clear expression.”).
¶ 20 The remaining question as to the fifty-five claims filed before the effective date of § 9^162.02(C) is whether the new statute of limitations was made applicable to them by virtue of § 12-505(B). No Arizona case has ever read § 12-505(B) as barring claims filed before the effective date of a new statute of limitations, and we decline to do so. Cf. Hershey v. Rich Rosen Constr. Co., 169 Ariz. 110, 115 n. 1, 817 P.2d 55, 60 n. 1 (App.1991) (noting in dictum that an amended statute of limitations cannot apply retroactively to suit filed before the effective date of the act). The most reasonable reading of each of the provisions of § 12-505 is that each was meant to apply to suits filed after the effective date of a new statute of limitations and to specify what statute of limitations would now apply. As to claims filed before the effective date of the new statute, absent an express legislative statement to the contrary, the law in effect at the time of filing applies.
C.
¶ 21 The thirty-four claims raised for the first time in the second amended complaint were filed after § 9-462.02(C) became effective. Section 12-505 therefore provides the statutory framework for analysis of the statute of limitations issue as to these claims.
1.
¶ 22 The City and Clear Channel agree that § 12-505 controls the disposition of these thirty-four added claims; the parties disagree, however, both as to whether subsection B or C of the statute applies and as to the interpretation of these subsections. Each party contends that § 12-505 was meant to incorporate the common law; each party therefore relies upon and argues the construction of various decisions interpreting the common law and predecessor versions of § 12-505. Analysis of those arguments thus requires a brief historical review.
¶ 23 We start with the apt observation of the Territorial Supreme Court in 1904:
Upon few, if any, branches of the law, is there such contrariety of view expressed by the courts as upon the effect to be given new statutes of limitation upon causes of action existing at the time the statutes go into effect.
Curtis, 9 Ariz. at 65, 76 P. at 613. As Curtis noted, the “general rule” was that, absent a contrary legislative expression, new statutes were given only a prospective application and were not applied to causes of action accruing before the effective date of the statute. Id.
¶ 24 Since at least 1901, however, Arizona has had statutes expressly speaking to this issue. The first was paragraph 2974 of the Civil Code of 1901, which stated:
No one of the provisions of this title shall be so construed as to revive any claim which is barred by pre-existing laws; and all claims against which limitation under said laws had commenced to run shall be barred by the lapse of time which would have barred them had those laws continued in force.
*541 Ariz. Civ.Code 1901 ¶ 2974. This provision neatly captured the general common law rule: causes of action accruing before the effective date of the new statute were governed by the statute of limitations in effect at the time of accrual; causes accruing after the effective date of the new statute were governed by that new statute. See Crowell v. Davenport, 11 Ariz. 323, 327-28, 94 P. 1114, 1115 (1908) (holding that suit on a contract cause of action that had accrued prior to effective date of new statute was governed by statute in effect at time of accrual).
¶ 25 Paragraph 2974 did not address the situation in which the legislature chose to apply a new statute of limitations to causes of action existing before its effective date. In such cases, the rule was that the plaintiff must be provided a reasonable period before the new statute takes effect to bring his action. See Cummings, 12 Ariz. at 329-32, 100 P. at 813 (holding that the time between the passage of a new statute of limitations and its effective date was an adequate period); Work v. United Globe Mines, 12 Ariz. 339, 345-46, 100 P. 813, 815 (1909) (same). This rule was based not upon paragraph 2974, but rather upon the notion that allowing a new legislative enactment to abrogate an existing cause of action presented constitutional difficulties. See Cummings, 12 Ariz. at 330, 100 P. at 812; see also supra note 6. Paragraph 2974 remained essentially unchanged for nearly thirty years. See Ariz. Civ.Code 1913 ¶ 733. The Revised Code of 1928, however, contained a significant change to this statute. Section 2073 of that Code, entitled “Amending statute,” provided:
A cause of action barred by pre-existing laws is not revived by the amendment of such law enlarging the time; if not so barred, the time fixed in the new law shall govern such action; if the new law shortens the time fixed in the pre-existing law, and thereby such cause would be barred when the new law takes effect, such cause of action may be brought within one year from the time the new law takes effect, and not afterward.
Ariz. Rev.Code 1928 § 2073. This provision was carried forward into the 1939 Code, without substantive change, as § 29-308. In 1956, this statute was re-codified as A.R.S. § 12-505 with just one substantive change: the three clauses were broken into subparts A, B, and C. This statute remains in effect today without change.
¶ 26 Subsection A of § 12-505 thus incorporates the first clause of former paragraph 2974. But the 1928 codification and all subsequent versions do not contain the second clause of paragraph 2974, which codified the common law rule that, absent a specific indication of legislative intent to the contrary, new statutes of limitations do not apply to causes of action accruing before the effective date of the new statute. Rather, subsection B provided that the new statute would apply to such causes of action. Subsection C set forth a qualification to subsection B: when application of the new statute would result in barring an existing cause of action, the plaintiff had one year from the effective date of the new statute to bring suit. Thus, while subsection C is in part grounded on the common law rule that a plaintiff must always be given a reasonable time to bring suit after a new statute of limitations takes effect, it is also a recognition that another common law rule — that new statutes of limitations were generally interpreted as prospective only— no longer applied.
¶ 27 Therefore, the parties’ arguments about how the holdings in various cases such as Cummings and Crowell apply to the current situation are largely irrelevant. Those cases either interpreted paragraph 2974 of the 1901 Code or applied general rules because paragraph 2974 was silent as to the situation before them. Our job instead is to apply § 12-505, a statute markedly different from both paragraph 2974 and the general rules in effect in the first decade of the twentieth century.
2.
¶ 28 Section 12-505(A) provides that “[a]n action barred by pre-existing law is not revived by amendment of such law enlarging the time in which such action may be com- *542 meneed.” Because the City’s thirty-four causes of action in the second amended complaint were not barred by the law pre-exist-ing the enactment of § 9-462.02(C), no party contends that this subsection applies to this case.
¶ 29 Subsection B provides that “[i]f an action is not barred by pre-existing law, the time fixed in an amendment of such law shall govern the limitation of the action.” The parties, agree that this section applies on its face to this case, because the City’s thirty-four claims were not barred by pre-existing law. But the parties offer sharply differing interpretations of subsection B.
¶ 30 The City claims that subsection B allows it two years from the effective date of § 9-462.02(C) to bring any causes of action accruing before that date. This argument relies heavily on language in Crowell stating that
[t]he rule for the construction of new, reenacted, or amended statutes of limitation applied in some jurisdictions is that, unless a contrary intent be expressed, they are to be given a prospective effect so as to extend the period of time within which suits might be brought on existing causes of action to the full time prescribed by such statutes counting from the time they take effect.
11 Ariz. at 326, 94 P. at 1115. Crowell eventually held, however, that this rule did not apply in Arizona in light of paragraph 2974, and that causes of action accruing before the effective date of a new statute were governed by the old statute of limitations. Id. at 327-28, 94 P. at 1115.
¶ 31 The City’s argument suffers from another flaw. If subsection B is construed as the City suggests, subsection C is completely superfluous — there would never be any ease in which the cause of action is barred by the amended statute, because in each case the plaintiff would be given the full period of the new limitations statute, starting from the time that statute took effect, in order to bring suit. Whenever possible, we do not interpret statutes in such a manner as to render a clause superfluous. State v. Deddens, 112 Ariz. 425, 429, 542 P.2d 1124, 1128 (1975).
¶ 32 Clear Channel argues that subsection B does not preserve the City’s claims because under the new statute of limitations each claim must be brought within two years from discovery, and there is no dispute that each of the thirty-four claims in the second amended complaint was brought more than two years after discovery. The court of appeals so held. Clear Channel, 206 Ariz. at 338 ¶ 8, 78 P.3d at 1056. We agree. The language of § 12-505(B) is “clear on its face,” and must be “applied according to its plain meaning.” Id.; accord Bilke v. State, 206 Ariz. 462, 464-65 ¶ 11, 80 P.3d 269, 271-72 (2003).
¶ 33 We part company with the court of appeals, however, on its construction of subsection C. That subsection provides that “[i]f an amendment of pre-existing law shortens the time of limitation fixed in the preexisting law so that an action under preexisting law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect, and not afterward.” The court of appeals held that this statute did not apply when “an action is not barred by pre-existing law,” and that only subsection B applied in that circumstance. Clear Channel, 206 Ariz. at 338 ¶ 8 n. 5, 78 P.3d at 1059.[9]
¶ 34 The difficulty with the court of appeals’ interpretation is that it also renders *543 subsection C superfluous. Subsection A already makes clear that if an action were barred by pre-existing law, a new or amended statute of limitations does not serve to avoid the statute of limitations bar. If subsection B were meant to cover all other situations — those in which the claims were not barred by pre-existing law — subsection C would cover no claims at all. We do not construe statutes as containing useless provisions unless no other construction is possible. Deddens, 112 Ariz. at 429, 542 P.2d at 1128; Bilke, 206 Ariz. at 464 ¶ 11, 80 P.3d at 271 (“The court must give effect to each word of the statute.”).
¶ 35 There is in this case a more sensible reading of the statute, and one that gives force to all of its provisions: subsection C covers those cases in which the cause of action is not barred by pre-existing law, but when application of the new statute of limitations would bar the claim. Put differently, subsection C covers a subset of the cases described in the first clause of subsection B — actions “not barred by pre-existing law” — but only those for which application of the new statute of limitations would bar the action.
¶ 36 This reading, which is compatible with the plain language of § 12-505, results in the statute providing a logical, integrated approach to new statutes of limitations. Subsection A provides that such a statute does not revive claims barred by limitations before the effective date of the statute. Subsection B provides that the new statute will govern claims not so barred, with one qualification, set forth in subsection C: if, under subsection B, a claim would be barred by application of the new statute, the claimant has one year after the effective date of the new statute to bring suit.
¶ 37 Clear Channel does not disagree with this general reading of subsection C. It argues, however, that subsection C does not apply in this particular ease. Clear Channel’s argument is grounded in the language of the first clause of subsection C, which makes that statute applicable only when “an amendment of pre-existing law shortens the time of limitations fixed in the pre-existing law” (emphasis added). Clear Channel contends that this language excludes the City’s suit from the coverage of subsection C because, prior to the enactment of § 9-462.02(C), there was no statute of limitations applicable to the City’s claims.
¶ 38 To the extent that Clear Channel’s argument is that there was no “pre-existing law” governing the time in which the City’s claims were required to be filed, it fails as a matter of statutory interpretation. Such an argument presumes that the “pre-existing law” must be a specific statute of limitations. But the legislature did not use the term “statute” or “statute of limitations” in § 12-505(C); it referred in this subsection, as in the balance of § 12-505, to “pre-existing law.” “Law” encompasses more than just statutes; it also includes constitutional provisions, the common law, and judicial decisions. Wagenseller v. Scottsdale Mem’l Hosp., 147 Ariz. 370, 378, 710 P.2d 1025, 1033 (1985) (recognizing that law emanates not just from statutes, but also constitutions and judicial opinions). See Black’s Law Dictionary 889 (7th ed.1999) (defining “law” as “[t]he aggregate of legislation, judicial precedents, and accepted legal precedents; the body of authoritative grounds of judicial and administrative action”).[10] While the legislature can, of course, provide a contrary definition of “law,” nothing in the language of A.R.S. *544 § 12-505(C) suggests the legislature intended to do so.
¶ 39 Section 9-462.02(C) thus plainly “shortens the time” provided by prior law in which the City must bring its claims. Under the law in effect before the effective date of § 9-462.02(C), the City could bring those claims whenever it chose. After the effective date of the new statute, it was required to bring the claims within two years of discovery of the violation.
¶ 40 Clear Channel also argues that, because § 12-505(C) applies only when a statute “shortens the time of limitation fixed in the pre-existing law,” the subsection cannot apply here, because there was no specific time of limitation “fixed” before the effective date of § 9-462.02(C). The argument has some superficial appeal, but we are required to read a statute in such a way as to give it a fair and sensible meaning. Robinson v. Lintz, 101 Ariz. 448, 452, 420 P.2d 923, 927 (1966). “Fixed” can sensibly be read as synonymous with “provided,” and pre-existing law here provided express guidance as to the time in which the City’s claims could be brought: under § 12-510, the City could take as much time as it desired. It cannot be contested that § 9-462.02(C) “shortens” that time period.[11]
¶ 41 In the end, Clear Channel’s argument is really that § 12-505(C) was not meant to apply to claims by governmental agencies, at least when no statute previously imposed a specific time limitation on the claims. But nothing in either the specific language or the history of § 12-505 supports this hypothesis. Moreover, because Clear Channel agrees that subsections A and B do apply to claims by governmental agencies, its interpretation of subsection C requires us to conclude that the legislature wanted some parts of the statute, but not others, to apply to governmental claims. Again, such a conclusion is supported by neither the language of the statute nor its history.
¶ 42 The most logical reading of § 12-505 is one that makes it applicable to the entire universe of unfiled claims allegedly affected by new or amended statutes of limitation. Subsection A provides that claims under which the time to file had already passed under the old statute remain barred. Subsection B provides that the new statute generally applies to all other claims, but an express qualification to the general rule is set forth in subsection C. If a claim would have been timely filed under the old law but not the new, under subsection C the plaintiff has one year from the effective date of the new law to file suit.
3.
¶ 43 The effective date of A.R.S. § 9-462.02(C) was July 18, 2000. The thirty-four claims in the amended complaint were filed on July 17, 2001. If these claims were time-barred on the effective date of § 9-462.02(C) by the new statute of limitations, they were timely under § 12-505(C) because they were filed within one year of the effective date of the new act.[12]
*545 III.
¶ 44 For the reasons above, we vacate the opinion of the court of appeals and the judgment of the superior court dismissing the City’s claims and awarding attorneys’ fees and costs to Clear Channel. Because Clear Channel was not the prevailing party, we deny its request pursuant to A.R.S. § 12-348 (2003) for attorneys’ fees incurred in this Court.[13] This case is remanded to the superior court for further proceedings consistent with this opinion.
CONCURRING: CHARLES E. JONES, Chief Justice, RUTH V. McGREGOR, Vice Chief Justice and MICHAEL D. RYAN, Justice.

. Whiteco was acquired by Eller Media Company in 1998. Eller Media was a division of Clear Channel at the time and later changed its name to Clear Channel Outdoor, Inc.

. Of the eighty-nine dismissed claims, fifty-five were from the original complaint and thirty-four from the second amended complaint.

. Our order granting review asked the parties to address the applicability of A.R.S. § 12-505(C) in their supplemental briefs.

. The court of appeals held that retroactive application of the two-year statute of limitations in § 9-462.02(C) to pending enforcement actions would not impair any vested rights of the City. Clear Channel, 206 Ariz. at 337-38 ¶ 7, 78 P.3d at 1058-59. The City does not now argue otherwise.

. Curtis relied in part on paragraphs 2974 and 4243 of the Code of 1901. These sections were the precursors of today’s A.R.S. § 12-505(A) (2003) and A.R.S. § 1-250 (2002), respectively.

. When vested rights of private parties are involved, constitutional considerations prevent an amended statute of limitations from immediately barring a claim that would have been timely filed under the previously existing statute. Sohn v. Waterson, 17 Wall. 596, 84 U.S. 596, 599, 21 L.Ed. 737 (1873) ("[A] literal interpretation of the statute would have the effect of absolutely barring such action at once. It will be presumed that such was not the intent of the legislature. Such an intent would be unconstitutional.”). Rather, a "reasonable time” must be given for a plaintiff to commence the action either before the bar takes effect or after the effective date of the new statute. Terry v. Anderson, 95 U.S. 628, 632-33, 24 L.Ed. 365 (1877); 51 Am.Jur.2d Limitation of Actions § 45 (2000).

. Several cases holding that newly enacted statutes of limitations do not apply retroactively to cases timely filed before the effective date of the new act involved claims by public entities, and thus would not seem to rest on the "vested rights” doctrine. See, e.g., City of Willmar, 475 N.W.2d at 75-76 (involving suit by city against designer of improvements to wastewater facility); Nat' l Liquors Empire, 109 Ill.Dec. 627, 510 N.E.2d at 496 (involving suit by Illinois Department of Revenue for unpaid sales taxes); Simmons, 290 N.W.2d at 594 (involving state's petition concerning ownership of riverbed).

. As Justice Berch's concurring and dissenting opinion demonstrates, the legislature likely had precisely the opposite intent in enacting § 9-462.02(C).

. Clear Channel argues that the City cannot rely upon § 12-505(C) because it “abandoned” that position below. Even assuming arguendo that the City did so, it is clear that we may consider this argument. While we generally will not consider arguments not presented below, Barrio v. San Manuel Div. Hosp. for Magma Copper Co., 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984), this is a rule of prudence, not of jurisdiction. "When good reason exists, this court may and will entertain such questions.” Jimenez v. Sears, Roebuck & Co., 183 Ariz. 399, 406 n. 9, 904 P.2d 861, 868 (1995). One such "good reason” is when the issue is of statewide importance. Hawkins v. Allstate Ins. Co., 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987); Barrio, 143 Ariz. 101, 692 P.2d at 283.
*543 Review of the subsection C issue is plainly proper here. First, this is an issue of first impression and of statewide significance. Second, the court of appeals expressly took up the issue. Third, in its order granting review, this Court gave notice of its interest in subsection C and requested supplemental briefing on the issue. Fourth, because both parties agree that this case turns on interpretation of § 12-505, there is no logical reason not to address all applicable subsections of that statute.

. See State v. Wise, 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983) (noting that where contested words were not defined in the statute, and where there is "no indication that the Legislature intended that either word be given an extraordinary meaning, reference to an established, widely respected dictionary for the ordinary meaning of these words is acceptable”).

. Justice Berch suggests that our interpretation of § 12-505(C) produces a "counterintuitive” result when this subsection is applied to certain hypothetical claims involving no pre-existing statute of limitations. Infra ¶¶ 76-77. However, the very same “counterintuitive" result occurs when a statutory amendment alters a pre-existing statute of limitations in these hypothetical situations. For example, if the legislature changed the statute of limitations for a particular claim from ten years to one year, those with nine-year-old claims would have, under the plain terms of § 12-505(C), one year from the effective date of the new statute to file suit. Yet, those with claims that were six months old would have only six months under § 12-505(B) to file suit. Thus, our interpretation of § 12-505(C) produces the same result whenever, in the words of the subsection, a statutory amendment "shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect,” whether or not the "pre-existing law” was a specific statute of limitations or some other provision of law.

. In a post-argument filing, Clear Channel suggests that some of the thirty-four claims may not have been barred on the effective date of § 9-462.02(C) by virtue of the new statute of limitations because they were discovered less than two years before the effective date. If this is so. Clear Channel argues, § 12-505(B) applies, and any claim eventually filed more than two years *545 after discovery is time-barred. Given their dispositions of this case, neither the superior court nor the court of appeals had occasion to address this argument, which Clear Channel may raise in the superior court on remand.

. The City filed a "Motion for Review of Attorneys' Fees Award and Motion to Strike and Deny Clear Channel’s Supplement to Response to Petition for Review.” Because this opinion vacates the awards of attorneys’ fees below and denies the attorneys’ fees requested by Clear Channel in its "Supplement to Response to Petition for Review,” the City’s motion is denied as moot.